Good morning, Ms. Metelska. Yes, good morning, Your Honors. May I please the court, counsel? Your Honors, this is a case of petitioner who is from El Salvador. He has three United States citizen children. He's been living in the U.S. for the past 15 years. The board denied his cancellation removal case as well as political asylum. It was said that he was convicted of a crime involving marturpitude, which I will call a CMT. And they also said that they're not going to remand the case back because he had the opportunity to apply for asylum already. Your Honors, I am going to focus on the task for the CMT because it needs to be applied correctly in order to determine if a conviction is a CMT or not. Your Honors, in order for a conviction to be a CMT, there has to be some kind of mantra, a state of mind, and there has to be the conduct or the offense has to be committed with a vicious or evil intent. So this is the test. Then we take the test and there is a specific approach to apply the test in order to find out whether a conviction is a CMT or not. And the approaches that we have are the categorical approach, which looks at the elements of the statute. And then if that doesn't answer the question, then we go to the categorical modified approach. And per DSCAMS v. United States recent U.S. Supreme Court, we have to focus on the elements of the statute. Basically, under the categorical approach, what we do is we look at the conviction record but only in order to determine which particular statutory phrase the petitioner was convicted under. And the record of conviction that we are allowed to look at is the plea, is the verdict, and sentence, also the indictment and your instructions. And then if we still don't have an answer to the question, we basically go to the third step and we look at any evidence available in order to answer the question of whether the conviction is a CMT. Where do you think the fighting point is here at the second step? Are you saying that because it's a reckless standard, because as I understand it, the parties all agree he was convicted under the reckless portion? Yes. Is that right? I'm sorry to interrupt. Yes, yes, that's correct. And that, I'm saying that this determination is done under the categorical modified approach because we have to take a look at the record in order to determine that he was indeed convicted under the second statutory phrase, which is the recklessness. And so is it your position that we should stop, that the court should have stopped there? Yes, Your Honor, and this is why. I think that the second approach, the categorical modified approach answers the question because there is a Minnesota case, a case from the Minnesota Court of Appeals which interprets the measure of recklessness. And this is State v. Birgham, and I think the opposing counsel did cite to that case in his brief. And what it says is that a threat with recklessness may be made unintentionally, and this is on page 57. Basically the case says that this is a threat committed with recklessness is not a specific intent crime. It's a general intent crime. And the case also says, and I quote, for example, the statement, I'm going to kill you, is subjectively a threat to commit a homicide, but the context may establish something else. Although the context might convey an actual intent to kill, it also may indicate anger or frustration without an intent to kill, or even humor. And this is on page 56. Why does this establish that it's not a crime of moral turpitude? Your Honor, because threat committed with recklessness does not have the intent to kill. I know that, but why does intent to kill a requirement for a crime of moral turpitude? Because the test for a CMT is is there a mensura? And we do have the mensura, but what I would argue is that this crime has not been committed with the evil intent that's necessary. And with and this is what the Minnesota Court of Appeals said, that because these kind of crimes can be committed unintentionally, there cannot basically be the evil intent that's necessary to be a CMT. What case or what proposition why is evil intent a requirement? What's the authority for that? That would be a matter of Silva-Trovino, Your Honor. That's what it started from, and then it was accepted by the mensura versus holder. Now, what I would argue I don't know that Silva-Trovino said it was a necessary element. From my interpretation, Your Honor, and from the case law, what I got is that the test, there needs to be two requirements met in order for conviction to amount to CMT. There has to be mensura, and there They talk about reprehensible conduct. Yes, and that's the evil that has to be in the offense. But the question here, I thought, is whether one can engage in reprehensible conduct recklessly. And one could, but not always. And so in this case, if we have to, we may have to go to the third step and then look at the record outside, and we have the sentencing transcript. And the sentencing transcript basically says that petitioner never admitted to have the intent to kill anyone or harm anyone. The only intent that he really had was to, in the worst case scenario, commit a suicide. He was basically victimizing himself, and this kind of crime, there was no evil intent, because what he was doing was not committed with evil intent. Was that transcript in the administrative record? The sentencing transcript, yes, Your Honor. Not the plea transcript that we provided. But they pretty much say the same thing. The plea transcript, though, he's not pleading guilty to threatening to kill himself, though, right? I mean, there is a little bit of a disconnect between what was said at the plea hearing and then what was what you would say at the sentencing hearing? Yes, but the plea, what the plea does establish is that and the counsel of defense clarifies it, is that he does not admit to actually threaten the victim. So therefore, the way they did the plea is that he only pled to recklessness because it was really unintentional that there was some kind of fear that the victim had as a result of his suicidal threats. Your Honor, so I'm going to stop here. But the element of the crime is that the other party was placed in fear of harm, right? Yes. So he pled guilty to causing her fear of harm to herself, didn't he? Which, under the recklessness, could have been done unintentionally. Okay, I understand that point. You want to save the rest for rebuttal? Yes, thank you, Your Honor. Mr. Bless, we'll hear from you. May it please the Court, my name is Jesse Bless, I represent the Attorney General of the United States. Judge Colton, it would be remiss if I didn't point out that you've had the benefit of drafting a lot of opinions on this issue, which is what types of crimes committed recklessly constitute crimes involving moral turpitude? In the last, I guess, ten years, we've had recklessly causing serious physical injury, that constitutes a crime involving moral turpitude. Recklessly endangering a child, that has been found to constitute a crime involving moral turpitude. Today, we have to address an issue that was left unsaid in another Judge Colton opinion, in Chameney, which is when you violate the Minnesota statute for making terrorist threats, recklessly, does that constitute a crime involving moral turpitude? The Board determined that it did. Its decision was not arbitrary or capricious, because it falls within the spectrum of crimes that constitute this turpitudinous conduct with a sufficient degree of scienter. The Board really didn't give us much reasoning, did it? I guess it could have it always could provide more. I mean, as an appellate attorney, you're always looking for more in the record to justify your arguments, but its conclusion is sound. The cases cited support its reasoning. What we're looking for here is reprehensible conduct. In Chameney, this Court determined that when you cause another person extreme fear by making a threat of a crime of violence, that's reprehensible conduct. The question here is, is there a difference when you do that with a conscious disregard of a substantial risk of causing another harm, which is the definition of recklessness in Minnesota. The Board concluded that it was not. This case falls within the broad spectrum of cases. So your position is that we stop at step two? Yes. This is always reckless. Is there anything to distinguishing what the reckless behavior, the object or subject of the reckless behavior was? You've listed physical injury, causing physical injury. I think there are cases involving death, endangering a child. Is there any distinction we should be making in that part of the crime, not just the recklessness, but maybe there's reckless behavior intending a crime of moral turpitude and then behavior that doesn't qualify. What we're looking for when we have reckless behavior, we're looking for an aggravating factor. A simple assault, the Board has determined, when you have a simple assault committed recklessly and there's no injury requirement, we don't have an aggravating circumstance. But when you cause someone, when you endanger a child, like we had in Hernandez-Perez, when you have a substantial physical injury or imminent death, when you have extreme fear, like we have here, that those cases align together because causing someone extreme fear, the type of extreme fear that's encompassed by the state statute, that's an aggravating factor. And you're saying that always is encompassed in that particular statute, even if it's reckless? Yes. Now, I understand that this Court's case law in Bobadilla allows for, if you're still not satisfied, you can always move to the third step of Silva-Trevino. You've deferred to that decision. And if you take a look here, if you have to go, the Attorney General's position is that you should not go there and you should rule that every, you know, you'd actually add to Chaminee in this case and you'd say that every conviction under this Minnesota statute, whether purposeful or recklessly, when threatened against a person, would constitute a crime involving moral turpitude. But assuming that you wanted to take a further step and resolve it by looking to other evidence in the record, and we do know here, it's undisputed, that he used a large knife in front of his wife and children. Now, we know those are protected groups of people. But we don't go to the facts, do we? Can't we stop with the prong of the statute? Yeah. And that's, and I'm not saying you should go any further than that. But in Bobadilla, you defer to Silva-Trevino. So if you, there's... You're saying Silva-Trevino says we don't use the Shepard analysis in this statute. We go beyond that into the facts. Yeah. And this court in Bobadilla, unlike some other circuits, seemed to defer to that. Yes. And they said, you know, what, you know, if you're, now if you're... But your position is we don't need to go there. No. No, but... At least with respect to this part of the statute, reckless disregard of causing terror. That's correct, Your Honor. You think the causing terror or the aggravating factor that you would point to here? Yeah, but it's not inconvenience. It's extreme terror. Now, there's other parts of the statute where you have... Well, the statute doesn't say extreme terror. No, right. It's... But to terrorize... I mean, it says causing such terror... Such terror. Yeah. Or inconvenience. So... Yeah. And terrorize is inconvenience? Is that an aggravating factor? Surely not. No. Let me get the full... Was he... Is it clear he was convicted of causing terror and not causing inconvenience? Yes, Your Honor. I mean, the record demonstrates that. He pled to that. All right. So you overstated it when you say we would be saying that the whole statute is covered. Any violation of the statute is covered. Yeah. And I want to be clear here because... You mean any violation of this type of violating the statute? Yes, Your Honor. Disregarding risk of causing terror. Yes. And I've tried to brief it and I've tried to explain it in a way that the court did in Chamonix, which is it was undisputed what the person was convicted of. There was purposely... Yeah. And so when the court in that case said, we're only looking at this. And when I'm... The position of the Attorney General here is, okay, well here we know it's undisputed that he was convicted of recklessly doing what the petitioner did in Chamonix purposefully. I don't know if you understand what I'm saying. Now this aggravating factor point, is that still part of the board's analysis after Silva Trevino? You brought it up here. Yeah. It's in our case law but most of those cases are before Silva Trevino. Right. Do you think Silva Trevino retains that analysis when they talk about reprehensible conduct? I think they're almost synonymous. That reprehensible... Yeah. I think they're synonymous. I think they're interchangeable. The old aggravating factor cases are part of what is now reprehensible in the court's view. Right. So that maybe in Hernandez-Perez you wouldn't say that the aggravating factor was it would be the reprehensible conduct was the endangering the child. You could say aggravating, you could say reprehensible. Now I know that other courts have looked to the approaches are so different. But other courts will say there's a protected class of victims make it reprehensible or aggravating. And I think what the Attorney General in Silva said is that listen we're looking for just reprehensible conduct and try to make it a streamlined uniform approach. And so I think going forward you would just use the term if you can find reprehensible conduct that's sufficient. But what is reprehensible is when you have a crime committed recklessly what is reprehensible is not always the same as when it's done intentionally. And the Attorney General did not take that approach in Silva Trevino. And so when you look at what a CIMT is you always have to look at the judicial and administrative decisions to find out because the term itself is so nebulous. And so my position here and the Board's position here is that committing this specific statute recklessly falls within those line of cases. When you recklessly threaten to commit a crime of violence against another and cause such terror. Okay. What was the crime of violence that he threatened to commit in this case? He says it I don't think. A suicide wouldn't qualify would it? No. That's why again it's not resolved. He makes in the sentencing he says we just want to be you know I think there's a paragraph where he says I just want to be clear I was threatening to kill myself. I wasn't threatening to kill her. In the police report. But how could he plead guilty then? You're saying as a matter of law he must have threatened to hurt the victims because of course we know there were victims. He wasn't the victim here. There was no contact with the wife. We know So what is the crime of violence that he threatened to commit? Is that clear from the record? But we know that what a crime of violence is is defined under Minnesota law. And it's aggravated assaults, murder, significant crimes. Okay. Thank you. Thank you. Ms. Matuska you have time for rebuttal. What I want to say quickly is that opposing counsel cited too many cases that include aggravated factors. I think these cases are totally inapplicable to this case because the petitioner was not convicted of terroristic threats while fleeing a police officer. He was not convicted of terroristic threats while endangering a child. He was not convicted of terroristic threats with a dangerous weapon. So I would say we do not need to focus on any aggravated factors because there's none in this case. All we need to focus is on the conviction. And it seems like the counsel's arguments... If we get into the facts, we have a dangerous weapon and we have a wife and children. We have a domestic situation. Yes, and what counsel was saying, he would stop at the second step which does not allow us to consider the facts. I agree, but he was saying alternatively. When Judge Shepard asked, he said you could go to the facts. Yes, although I would argue under these cases versus U.S. we can't really consider the facts of the conviction because we don't want to retry the petition or something. The criminal court already convicted him of. You have a view on what crime of violence the defendant threatened to commit? I would say, Your Honor, it's not clear. I don't think that the record really reveals. Thank you. Thank you very much. Very good. Appreciate your argument. Thank you both counsel for your arguments. The case is submitted and we will file an opinion in due course.